IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

| | |
|---|---|
| **CARMELO FONSECA,** <br><br> **Plaintiff,** <br><br> -v- <br><br> **EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES, LLC, TRANS UNION, LLC, and BANK OF AMERICA, N.A.,** <br><br> **Defendants.** | Civil Case Number: <br><br> <u>CIVIL ACTION</u> <br><br> COMPLAINT <br> AND <br> DEMAND FOR JURY TRIAL |

## INTRODUCTION

1. Identity theft has long been a widespread problem in this country. Over the past decades, identity theft has emerged as one of the fastest growing white-collar crimes in the United States.[1] Millions of Americans annually fall victim to this crime and are required to spend countless hours and untold effort in attempting to undo the resulting harm caused to their credit reports.[2] Most insidiously, the FTC estimates that approximately 1 out of 10 of these incidents of identity theft are committed by members of the victims family.[3]

2. Plaintiff, Carmelo Fonseca, has been the unfortunate victim of identity theft.

---

[1] *See, Sloane v. TransUnion Info. Servs., LLC*, 510 F.3d 495, 505 (4th Cir. 2007).
[2] Victimization surveys conducted by Synovate for the Federal Trade Commission estimate that, between 1998 and 2003, approximately 27.3 million adults discovered they were the victims of identity theft, with 9.91 million adults discovering they were victims in 2003 alone. *See,* Graeme R. Newman & Megan M. NcNally, *Identity Theft Literature Review* 14 (2005), http://www.ncjrs.gov/pdffiles1/nij/grants/210459.pdf (citing Synovate, Federal Trade Commission—Identity Theft Survey Report 7, 12 (2003), http:// www.ftc.gov/os/2003/09/synovatereport.pdf).
[3] See IdentityHawk, *Your Identity Third Could Be Your Sibling or Child,* available at https://www.identityhawk.com/Your-Identity-Thief-Could-Be-Your-Sibling-or-Child/.

-1-

Specifically, upon information and belief, at least one person has fraudulently opened a Bank of America account using Plaintiff's PII and Social Security Number, without his knowledge or authorization. This account has destroyed Mr. Fonseca's credit with each of the Defendants reporting this account negatively.

3. Rather than working with Mr. Fonseca to rectify this unfortunate situation, each of the Defendants refuse to remove this fraudulent account from his credit report, despite the Plaintiff specifically disputing the fraudulent item. Instead, the Defendants have continued to willfully and negligently harm the Plaintiff's credit report by continuing to associate thos fraudulent account with the Plaintiff, thereby severely impacting Plaintiff's life and his ability to obtain credit.

4. Plaintiff thus brings this action under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. (the "FCRA") alleging Experian, TransUnion, Equifax and BOA have been negligently, recklessly and knowingly disseminating false information regarding the Plaintiff's credit, namely by continuing to associate Plaintiff with this fraudulent account, particularly after the Plaintiff mailed letters to Defendants specifically advising them of this issue and submitting the necessary supporting documentation.

5. Plaintiff further alleges that the consumer reporting agencies Equifax, Experian and Transunion failed to investigate credit report inaccuracies in response to Plaintiff's disputes.

6. Plaintiff seeks statutory, actual, and punitive damages, along with injunctive and declaratory relief, and attorneys' fees and costs.

**JURISDICTION**

7. The Court has jurisdiction of this matter under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

8. Venue is proper in this judicial District pursuant to 28 U.S.C. 1391(b)(2).

## PARTIES

9. Plaintiff, Carmelo Fonseca ("Plaintiff"), is a resident of Havelock, North Carolina and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

10. Defendant Experian Information Solutions, Inc. ("Experian") is one of the largest credit reporting agencies in the United States and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

11. Experian is a corporation with its headquarters located in Costa Mesa, California.

12. Defendant TransUnion, LLC ("TransUnion") is one of the largest credit reporting agencies in the United States and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. TransUnion is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

13. TransUnion is a limited liability company with its principal place of business at 555 W. Adams Street, Chicago, IL 6066.

14. Defendant Equifax Information Services, LLC ("Equifax") is similarly one of the largest credit reporting agencies in the United States, and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. Equifax is a

"consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

15. Equifax's principal place of business is 1550 Peach Tree Street, N.W., Atlanta, GA 30309.

16. Defendant Bank of America, N.A. ("BOA") is a nationally chartered banking association with its headquarters located in Charlotte, North Carolina.

## FACTUAL ALLEGATIONS

17. Sometime in or around early 2023, Plaintiff discovered he was the victim of identity theft. Around that same time, Plaintiff noticed that a negative Bank of America account was appearing on his consumer credit reports from Experian, Equifax and TransUnion, which was opened without his knowledge or authorization to do so.

18. Plaintiff then took appropriate action, including filing an identiy theft police report with the Havelock Police Department.

19. Accordingly, on or about January 20, 2023, Plaintiff disputed this fraudulent account with Equifax, TransUnion and Experian, asserting that the account was not his, that Plaintiff was the victim of identity theft, and that this information should be removed or blocked.

20. With those disputes, Plaintiff included copies of the sworn police report.

21. Upon information and belief, BOA was notified of Plaintiff's disputes.

22. Following receipt of Plaintiff's dispute, Experian failed to conduct a reasonable investigation, correct or remove the fraudulent BOA account from the Plaintiff's credit file. Instead, that information is still being reported to this day.

23. Upon information and belief, Experian had all the information they needed to locate, investigate, and correct this inaccurate information, but just failed to do so.

24. Similarly, TransUnion refused to investigate, correct or remove the fraudulent BOA account from the Plaintiff's credit file. Instead, Transunion purported to that 'verified' that information as accurate. That that information is still being reported to this day.

25. Upon information and belief, TransUnion had all the information they needed to locate, investigate, and correct this inaccurate information, but just failed to do so.

26. Equifax also failed to conduct a reasonable investigation, correct or remove the fraudulent BOA account from the Plaintiff's credit file. Instead, that information is still being reported to this day.

27. Upon information and belief, Equifax had all the information they needed to locate, investigate, and correct this inaccurate information, but just failed to do so

28. Equifax, Experian, TransUnion, and BOA were each notified of the respective disputes, but refused to investigate and/or remove inaccurate reporting.

29. At all times pertinent hereto, Defendants' violations of the FCRA were willful, and carried out in reckless disregard for consumer's rights as set forth under section 1681s, 1681i and 1681b of the FCRA. Accordingly, Plaintiff is entitled to statutory, actual, and punitive damages under 15 U.S.C. § 1681n.

30. Additionally, Defendants' violations of the FCRA were negligent. Accordingly, Plaintiff is entitled to statutory and actual damages under 15 U.S.C. § 1681o.

31. In any event, Defendants are liable for Plaintiff's reasonable attorneys' fees and costs, pursuant to 15 U.S.C. §§ 1681n and 1681o.

32. As a direct and proximate result of the Defendants' willful and/or negligent refusal

-5-

Case 4:23-cv-00195-FL    Document 1    Filed 11/21/23    Page 5 of 16

to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed in his daily life, by the impact that this derogatory information has had on his credit score and the defamatory harm that Plaintiff has suffered as a result of having this fraudulent, negative information attributed to him and disseminated to creditors. For example, Plaintiff has been denied credit due to these derogatory inaccuracies, and has been offered credit on less favorable terms.

33. Defendants' violations of the FCRA further caused the Plaintiff great distress, anger, annoyance and frustration in his daily life, and subjected the Plaintiff to abusive credit reporting practices from which Plaintiff had a substantive right to be free.

## COUNT I
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681i
## AGAINST TRANSUNION

34. All preceding paragraphs are realleged.

35. At all times pertinent hereto, TransUnion was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).

36. The FCRA provides that:

> "***if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer*** and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, ***the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file*** in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."
> 15 U.S.C. § 1681i(a)(1)(a) (emphasis added).

37. On or about January 20, 2023, the Plaintiff initiated a dispute with TransUnion requesting that they correct and remove the specific fraudulent items in his credit file that were patently inaccurate and damaging to him, including the fraudulent BOA account. Plaintiff provided

-6-

information and documentation showing that he was the victim of identity theft and had not opened this account.

38. However, Defendant TransUnion never adequately investigated the Plaintiff's disputes, as required by the FCRA.

39. Instead, TransUnion, after either conducting no investigation or failing to conduct a reasonable investigation, continued to report this inaccurate information, something that any basic investigation would have prevented.

40. As a direct and proximate result of TransUnion's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed, as explained above.

## COUNT II
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681c-2
## AGAINST TRANSUNION

41. All preceding paragraphs are realleged.

42. On or about January 20, 2023, Plaintiff initiated a dispute with TransUnion requesting that they correct and remove the fraudulent BOA account, as this account was fraudulently opened by an individual other than the Plaintiff.

43. In support of this dispute, the Plaintiff included copies of the sworn police report he filed with the Havelock Police Department.

44. TransUnion refused to acknowledge that it had different obligations under such circumstances than those triggered by a standard dispute. Instead, on January, 2023, Transunion send Plaintiff a letter stating that it had determined that his request to block was denied.

45. As such, instead of following the law and blocking the fraudulent information on the Plaintiff's credit report within four days of receiving the dispute, TransUnion continued to

-7-

report this fraudulent information.

46. As a direct and proximate result of TransUnion's willful and/or negligent refusal to block this fraudulent information, as mandated by the FCRA, Plaintiff has been harmed.

## COUNT III
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681e(b)
## AGAINST TRANSUNION

47. All preceding paragraphs are realleged.

48. Section 1681e(b) of the FCRA requires that, "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

49. Accordingly, TransUnion was required to follow procedures to assure maximum possible accuracy of the credit reports it prepared concerning Plaintiff. However, TransUnion failed to do so.

50. Were TransUnion to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have removed the fraudulent Midland and PRA Accounts from the Plaintiff's credit report, especially after the Plaintiff (1) disputed the account with TransUnion, and (2) provided TransUnion with documents and information definitively establishing that he was the victim of identity theft and that this account was not opened by him.

51. Furthermore, were TransUnion to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have prevented the erroneous information from being reported on the Plaintiff's credit report, especially after the Plaintiff provided TransUnion with the information reflecting that this information was inaccurate.

52. As a direct and proximate result of TransUnion's willful and/or negligent failure to

follow procedures to assure maximum possible accuracy of the information it reports, Plaintiff has been harmed.

## COUNT IV
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681i
## AGAINST EXPERIAN

53. All preceding paragraphs are realleged.

54. At all times pertinent hereto, Experian was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).

55. The FCRA provides that:

> "*if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer* and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, *the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file* in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."
> 15 U.S.C. § 1681i(a)(1)(a) (emphasis added).

56. On or about January 20, 2023, the Plaintiff initiated a dispute with Experian requesting that they correct and remove the specific fraudulent items in his credit file that were patently inaccurate and damaging to him, including the fraudulent BOA account. Plaintiff provided information and documentation showing that he was the victim of identity theft and had not opened this account.

57. However, Experian never adequately investigated the Plaintiff's disputes, as required by the FCRA.

58. Instead, Experian, after either conducting no investigation or failing to conduct a reasonable investigation, continued to report this inaccurate information, something that any basic

-9-

investigation would have prevented.

59. As a direct and proximate result of Experian's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed, as explained above.

## COUNT V
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681c-2
## AGAINST EXPERIAN

60. All preceding paragraphs are realleged.

61. On or about January 20, 2023, Plaintiff initiated a dispute with Experian requesting that they correct and remove the fraudulent BOA account, as this account was fraudulently opened by an individual other than the Plaintiff.

62. In support of this dispute, the Plaintiff included copies of the sworn police report he filed with the Havelock Police Department.

63. Experian refused to acknowledge that it had different obligations under such circumstances than those triggered by a standard dispute.

64. As such, instead of following the law and blocking the fraudulent information on the Plaintiff's credit report within four days of receiving the dispute, Experian continued to report this fraudulent information.

65. As a direct and proximate result of Experian's willful and/or negligent refusal to block this fraudulent information, as mandated by the FCRA, Plaintiff has been harmed.

## COUNT VI
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681e(b)
## AGAINST EXPERIAN

66. All preceding paragraphs are realleged.

-10-

67. Section 1681e(b) of the FCRA requires that, "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

68. Accordingly, Experian was required to follow procedures to assure maximum possible accuracy of the credit reports it prepared concerning Plaintiff. However, Experian failed to do so.

69. Were Experian to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have removed the fraudulent BOA account from the Plaintiff's credit report, especially after the Plaintiff (1) disputed the account with Experian, and (2) provided Experian with documents and information definitively establishing that he was the victim of identity theft and that this account was not opened by him.

70. Furthermore, were Experian to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have prevented the erroneous information from being reported on the Plaintiff's credit report, especially after the Plaintiff provided Experian with the information reflecting that this information was inaccurate.

71. As a direct and proximate result of Experian's willful and/or negligent failure to follow procedures to assure maximum possible accuracy of the information it reports, Plaintiff has been harmed.

**COUNT VII**
**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681i**
**AGAINST EQUIFAX**

72. All preceding paragraphs are realleged.

73. At all times pertinent hereto, Equifax was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).

74. The FCRA provides that:

> "***if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer*** and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, ***the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file*** in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."
> 15 U.S.C. § 1681i(a)(1)(a) (emphasis added).

75. On or about January 20, 2023, the Plaintiff initiated a dispute with Equifax requesting that they correct and remove the specific fraudulent items in his credit file that were patently inaccurate and damaging to him, including the fraudulent BOA account. Plaintiff provided information and documentation showing that he was the victim of identity theft and had not opened this account.

76. However, Equifax never adequately investigated the Plaintiff's disputes, as required by the FCRA.

77. Instead, Equifax, after either conducting no investigation or failing to conduct a reasonable investigation, continued to report this inaccurate information, something that any basic investigation would have prevented.

78. As a direct and proximate result of Equifax's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed, as explained above.

## COUNT VIII
### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681c-2
### AGAINST EQUIFAX

79. All preceding paragraphs are realleged.

80. On or about January 20, 2023, Plaintiff initiated a dispute with Equifax requesting that they correct and remove the fraudulent BOA account, as this account was fraudulently opened by an individual other than the Plaintiff.

81. In support of this dispute, the Plaintiff included copies of the sworn police report he filed with the Havelock Police Department.

82. Equifax refused to acknowledge that it had different obligations under such circumstances than those triggered by a standard dispute.

83. As such, instead of following the law and blocking the fraudulent information on the Plaintiff's credit report within four days of receiving the dispute, Equifax continued to report this fraudulent information.

84. As a direct and proximate result of Equifax's willful and/or negligent refusal to block this fraudulent information, as mandated by the FCRA, Plaintiff has been harmed.

## COUNT IX
### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b)
### AGAINST EQUIFAX

85. All preceding paragraphs are realleged.

86. Section 1681e(b) of the FCRA requires that, "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

87. Accordingly, Equifax was required to follow procedures to assure maximum

-13-

Case 4:23-cv-00195-FL    Document 1    Filed 11/21/23    Page 13 of 16

possible accuracy of the credit reports it prepared concerning Plaintiff. However, Equifax failed to do so.

88. Were Equifax to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have removed the fraudulent BOA account from the Plaintiff's credit report, especially after the Plaintiff (1) disputed the account with Equifax, and (2) provided Equifax with documents and information definitively establishing that he was the victim of identity theft and that this account was not opened by him.

89. Furthermore, were Equifax to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have prevented the erroneous information from being reported on the Plaintiff's credit report, especially after the Plaintiff provided Equifax with the information reflecting that this information was inaccurate.

90. As a direct and proximate result of Equifax's willful and/or negligent failure to follow procedures to assure maximum possible accuracy of the information it reports, Plaintiff has been harmed.

<u>COUNT X</u>
**FAILURE TO INVESTIGATE DISPUTE**
**FCRA, 15 USC § 1681s-2(b)**
**AGAINST BOA**

91. All preceding paragraphs are re-alleged.

92. Furnishers of credit information have a duty under the FCRA to investigate disputes from consumers as to the accuracy of information being reported.

93. On or about January 20, 2023, Plaintiff initiated disputes with the credit bureaus disputing the accuracy of the account being reported by BOA.

94. Upon information and belief, BOA received notice of these disputes from the credit bureaus.

95. BOA was obligated, pursuant to section 1681s-2(b) of the FCRA to conduct a complete and thorough investigation with respect to Plaintiff's dispute.

96. Even after the Plaintiff properly disputed this account with the credit reporting agencies, BOA refused to conduct a reasonable investigation and continued inaccurately reporting the fraudulent account on Plaintiff's credit report.

97. BOA's conduct violated section 1681s-2(b) of the FCRA.

98. As a result of BOA's conduct, Plaintiff was harmed, as discussed above.

## DEMAND FOR TRIAL BY JURY

99. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demand judgment against Defendants as follows:

A. Awarding Plaintiff actual damages, statutory damages and punitive damages pursuant to pursuant to 15 U.S.C. §§ 1681n and/or 1681o, including pre-judgment and post-judgment interest;

B. Awarding Plaintiff the costs of this action and reasonable attorneys' fees and expenses pursuant to 15 U.S.C. §§ 1681n and/or 1681o;

C. A declaration that Defendants' conduct alleged herein is unlawful, as set forth more fully above;

D. Equitable relief, enjoining Defendants from engaging in the unjust and unlawful conduct alleged herein; and

E. Awarding Plaintiff such other and further relief as this Court may deem just and proper.

Dated: November 21, 2023

                By:    <u>/s/ Ari H. Marcus</u>
                        Ari H. Marcus, Esq. (NC Bar # 60687)
                        MARCUS & ZELMAN, LLC
                        701 Cookman Avenue, Suite 300
                        Asbury Park, New Jersey 07712
                        (732) 695-3282 telephone
                        (732) 298-6256 facsimile
                        *Attorney for Plaintiff*